**UNITED STATES DISTRICT COURT**          **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 9:15-CR-24 |
| | § | |
| ANITA DIGGLES (02), | § | |
| ROSIE DIGGLES (03) | § | |

## MEMORANDUM AND ORDER

Pending before the court are Defendants Anita Diggles ("Anita") and Rosie Diggles's ("Rosie") *pro se* Motions for Early Termination of Supervised Release (##244, 245), wherein they each seek early termination of their three-year terms of supervised release. The Government filed a response in opposition to their requests for early termination of supervised release (#248). Their United States Probation and Pretrial Services ("Probation") officer conducted an investigation and prepared reports in which he concurs with the position of the United States Attorney's Office and recommends that the motions be denied at this time, commenting that Anita and Rosie will be encouraged to continue progressing toward their goals while on supervision. Having considered the motions, the Government's response, Probation's recommendations, the record, and the applicable law, the court is of the opinion that Anita and Rosie Diggles's motions should be denied.

I.    <u>Background</u>

On December 2, 2015, a federal grand jury in the Eastern District of Texas, Lufkin Division, returned a twenty-eight-count Indictment against Walter Diggles ("Walter") (the father of Anita and the husband of Rosie), Anita, and Rosie charging them with various financial crimes (#1). Anita and Rosie were both charged in Count One with Conspiracy to Commit Wire Fraud,

in violation of 18 U.S.C. §§ 1343 and 1349.  Rosie was also charged in Counts Thirteen through Twenty-Two with Wire Fraud, in violation of 18 U.S.C. § 1343, and in Count Twenty-Eight with Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity, in violation of 18 U.S.C. § 1957.  On August 3, 2017, after an eight-day trial, a jury found Anita guilty of Count One and Rosie guilty of Counts One, Thirteen Through Twenty-Two, and Twenty-Eight of the Indictment.  On May 22, 2018, Judge Ron Clark sentenced both Anita and Rosie to 54 months' imprisonment as to each count of conviction (with Rosie's terms of imprisonment to run concurrently), followed by three-year terms of supervised release.  Anita and Rosie were each ordered to pay restitution in the amount of $971,143.57, for which they were jointly and severally liable with the other defendants (##168, 172).  The United States Court of Appeals for the Fifth Circuit affirmed Anita and Rosie's convictions on May 21, 2020 (##218, 219).  On November 10, 2010, the United States Supreme Court denied Rosie's petition for a writ of certiorari (#242).  Both Anita and Rosie were released from Bureau of Prisons ("BOP") facilities to home confinement (due to COVID-19) on June 16, 2020.  Anita and Rosie each began their terms of supervised release on January 18, 2022, which are projected to expire on January 17, 2025.

In their motions, Anita, age 48, and Rosie, age 70, ask the court to terminate their supervision at this time, after completing two-thirds of their three-year terms of supervised release without any disciplinary actions.  Both Anita and Rosie state that "this experience has renewed my faith and hope thus causing me to become a better person."  Anita and Rosie incorrectly assert, however, that their Probation Officer does not oppose their motions.

II.    <u>Analysis</u>

Title 18, United States Code, Section 3583(e) authorizes a district court to terminate supervised release at any time after the expiration of one year if, after considering the factors set forth in Section 3553(a),[1] "it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1); *accord United States v. Johnson*, 529 U.S. 53, 59-60 (2000); *United States v. Peters*, 856 F. App'x 230, 233 (11th Cir. 2021); *Herndon v. Upton*, 985 F.3d 443, 446 n.5 (5th Cir.), *cert. denied*, 142 S. Ct. 82 (2021); *United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020); *United States v. Cochran*, 815 F. App'x 361, 363 (11th Cir. 2020); *United States v. Davies*, 746 F. App'x 86, 88-89 (3d Cir. 2018), *cert. denied*, 139 S. Ct. 1275 (2019). "Early termination of supervised release is not an entitlement." *United States v. George*, 534 F. Supp. 3d 926, 927 (N.D. Ill. 2021). Instead, the defendant bears the burden of demonstrating that early termination is warranted. *Id.*; *United States v. Luna*, No. 1:95-cr-05036-AWI, 2018 WL 10156108, at *1 (E.D. Cal. Mar. 12, 2018), *aff'd*, 747 F. App'x 561 (9th Cir. 2018). Early termination "is not warranted as a matter of course." *United States v. Morris*, No. 3:99-cr-264-17 (VAB), 2022 WL 3703201, at *3 (D. Conn. Aug. 26, 2022). "To the contrary, it is only 'occasionally' justified." *United States v. Shellef*, No. 03-CR-0723 (JFB),

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable Sentencing Commission guidelines and policy statements; any pertinent policy statement of the Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim.  18 U.S.C. § 3553(a).

2018 WL 3199249, at *1 (E.D.N.Y. Jan. 9, 2018) (quoting *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)).

District courts enjoy considerable discretion in determining when the interest of justice warrants early termination.  *United States v. Tacker*, 672 F. App'x 470, 471 (5th Cir. 2017); *United States v. Jeanes*, 150 F.3d 483, 484-85 (5th Cir. 1998); *Lynn*, 2022 WL 2446328, at *3; *see Melvin*, 978 F.3d at 52.  Compliance with the terms of supervised release and with the law alone is not enough to merit early termination; such conduct is expected and required.  *United States v. Taylor*, 729 F. App'x 474, 475 (7th Cir. 2018) ("[M]ere compliance with the terms of supervised release is expected, and without more, insufficient to justify early termination."); *United States v. Seymore*, No. CR 07-358, 2023 WL 3976200, at *1 (E.D. La. June 13, 2023) ("[C]ourts have generally held that something more than compliance with the terms of [supervised release] is required to justify an early termination . . . ." (quoting *United States v. Smith*, No. 10-cr-53-DPJ-FKB, 2014 WL 68796, at *1 (S.D. Miss. Jan. 8, 2014))); *Lynn*, 2022 WL 2446328, at *4 (although the defendant adhered to the conditions of his release, a balancing of the 18 U.S.C. § 3553(a) factors did not support early termination, noting that the defendant "engaged in constant serious criminal behavior when he was given chances before"); *United States v. Sandles*, No. 11-CR-204-PP, 2021 WL 3080995, at *3 (E.D. Wis. July 21, 2021) ("[C]ourts have held 'that the conduct of the defendant necessary to justify early termination should include more than simply following the rules of supervision; otherwise, every defendant who avoided revocation would be eligible for early termination.'" (quoting *United States v. O'Hara*, No. 00-cr-170, 2011 WL 4356322, *3 (E.D. Wis. Sept. 16, 2011))); *United States v. Boudreaux*, No. 2:19-CR-00377-01, 2020 WL 7635708, at *1 (W.D. La. Dec. 22, 2020); *United States v. Pittman*, No. 3:15-CR-221-

4

O(1), 2020 WL 6564724, at *2 (N.D. Tex. Nov. 9, 2020) (finding that the conduct of the defendant did not warrant early termination of supervised release, as the defendant sought relief based on his circumstances and the alleged conduct of others) (citing 18 U.S.C. § 3583(e)(1)); *see United States v. Berger*, No. CR 09-308, 2021 WL 2354517, at *5 (W.D. Pa. June 9, 2021) ("Compliance with the conditions of supervision, including refraining from engaging in criminal conduct and paying restitution, however, is required behavior while serving a term of supervised release."). As courts have observed, "if every defendant who complied with the terms of supervised release were entitled to early termination, 'the exception would swallow the rule.'" *United States v. Kassim*, No. 15 Cr. 554-3 (KPF), 2020 WL 2614760, at *2 (S.D.N.Y. May 22, 2020) (citing *United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998)).

While the court need not find extraordinary, compelling, or changed circumstances to justify an early termination of supervised release, this does not mean that such circumstances are irrelevant to ruling on a motion under § 3583(e)(1). *United States v. Ferriero*, No. 13-0592 (ES), 2020 WL 6701469, at *2 (D.N.J. Nov. 13, 2020) (citing *Melvin*, 978 F.3d at 53); *accord United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016). This is because, if a sentence was "sufficient, but not greater than necessary" when first pronounced, pursuant to 18 U.S.C. § 3553(a), it would be expected that something has changed that would justify an early end to a term of supervised release. *Melvin*, 978 F.3d at 53; *United States v. Jackson*, No. 11-55, 2022 WL 2789870, at *2 (W.D. Pa. July 15, 2022); *United States v. Santoro*, No. 21-76 (MAS), 2022 WL 37471, at *2 (D.N.J. Jan. 4, 2022); *Ferriero*, 2020 WL 6701469, at *2. In other words, extraordinary circumstances may be sufficient to justify early termination of a term of supervised release, but they are not necessary for such a termination. *Melvin*, 978 F.3d at 53; *United States v.*

5

*McClamma*, 676 F. App'x 944, 947 (11th Cir. 2017) ("New or unforeseen circumstances can justify a modification, but such circumstances are not necessary."); *Parisi*, 821 F.3d at 347 (recognizing that "changed circumstances may in some instances justify a modification" of a term of supervision).   Nonetheless, "'generally, early termination of supervised release under § 3583(e)(1)' will be proper 'only when the sentencing judge is satisfied that new or unforeseen circumstances' warrant it."  *Melvin*, 978 F.3d at 53 (quoting *Davies*, 746 F. App'x at 89); *Seymore*, 2023 WL 3976200, at *1 ("[E]arly termination is usually granted only in cases involving changed circumstances, such as exceptionally good behavior." (quoting *Smith*, 2014 WL 68796, at *1)).

Anita's offense of conviction entails her participation in a conspiracy to commit wire fraud that spanned more than six years, while Rosie's offenses of conviction involve her participation in the six-year long conspiracy to commit wire fraud as well as her personally committing ten separate counts of wire fraud and one count of money laundering.  Over a six-year period, Anita and Rosie, along with Walter, engaged in a scheme to fraudulently obtain Social Services Block Grant ("SSBG") funds intended to assist the local citizens' recovery from Hurricanes Katrina, Rita, Ike, and Dolly.  Walter used his positions and influence as the executive director of the Deep East Texas Council of Governments and the pastor of New Lighthouse Church of God in Christ, as well as his influence with the Deep East Texas Foundation, which he founded, to divert SSBG recovery funds to accounts which he, Rosie, and Anita accessed to use for their benefit.  Walter was able to execute the scheme for several years because he was entrusted, publicly and privately, with the responsibility for distributing SSBG recovery funds.  Anita and Rosie used their positions of private trust within the Lighthouse Church to further the scheme, resulting in their joint and

several liability for a loss of $971,143.57, which is a portion of the total loss suffered by the victim, the United States Department of Health and Human Services.

In her motion seeking early termination, Anita asserts that she serves as Youth President at her local church and Interim Youth President of the Youth Department for the Texas Gulf Coast Jurisdiction of the Churches of God in Christ. She adds that she also recently received a missionary license as an Evangelist Missionary under the Churches of God in Christ Texas Gulf Coast Women's Department. Rosie states in her motion that she serves as President of the Women's Department of her local church and Co-Chair and President of the Auxiliary Department for the Texas Gulf Coast Jurisdiction of the Churches of God in Christ Department of Women. Neither Anita nor Rosie mentions working in any capacity outside the church or engaging in other charitable or educational pursuits. Anita and Rosie's continued affiliation with and leadership roles in the church are not particularly helpful to their cause, as it is very same church that they used as a conduit for fraudulently subverting thousands of dollars of government funds that were meant to flow to victims of a series of hurricanes that ravaged the area but instead flowed into their pockets.

As the Government points out in its response to the motions:

As is set out in the indictment in this case, along with the extensive presentence investigation reports, the defendants engaged in a conspiracy that ultimately diverted hundreds of thousands of dollars of funds that were meant to flow to victims of hurricanes that devastated the Gulf Coast and East Texas regions from approximately 2006 – 2012. While it is commendable that defendants have engaged in community activities as set out in their respective motions, they fail to acknowledge the significance of their actions and fail to explain how an early termination of their supervised release would serve to act as a deterrent to others who might consider engaging in similar behavior. Further, the Government notes that both defendants received early release from BOP custody and served a significant portion of their sentence in home confinement as opposed to a federal penitentiary. Finally, as shown in the discussion related to the status of the

defendants' restitution payments above, the § 3553 factor related to payment of restitution in excess of $900,000 does not support an early termination of supervised release.  The Government's ability to collect restitution will become no easier once the defendants' terms of supervised release end.

Probation similarly concludes as to Anita and Rosie's motions:

> Though [Ms./Mrs.] Diggles is to be commended for her apparent success thus far on supervision, it is believed that continuing the supervision term would be in the best interest of the community.  Given the sizeable restitution balance, and multiple counts/defendants involved in this financial crime, continuing the supervision term would allow the U.S. Probation Office to further monitor [Ms./Mrs.] Diggles' financial situation and ensure she avoids gambling or opening new lines of credit until January 17, 2025.

In this situation, the court concurs with both the Government and Probation, finding that Anita and Rosie's post-release conduct does not warrant early termination of their terms of supervised release.  Although both appear to have complied with their conditions of release, they identify no new or exceptional circumstances or needs.  Generally, early termination of supervised release is not granted unless there are significant medical concerns, substantial limitations on employment, or extraordinary post-release accomplishments that would warrant such a release.  Anita and Rosie do not identify any such circumstances in their motions and are instead seeking early termination of their supervision simply for complying with the conditions imposed by the court.  In the absence of employment or other apparent sources of income, neither has made significant progress in satisfying their more than $960,000 restitution obligation.  While Anita and Rosie's compliance with the conditions of their supervised release should be commended, continuing them on supervision would provide them the greatest opportunity for successful reentry as well as serve the best interests of the community.

Thus, although both Anita and Rosie appear to be on the right path, the court believes that completion of their full terms of supervised release appropriately reflects the seriousness of their

offenses, promotes respect for the law, provides just punishment for their offenses, deters future criminal conduct, and furthers the ability to provide restitution to the victim of the offenses.

III.   Conclusion

In accordance with the foregoing, Anita and Rosie Diggles's *pro se* Motions for Early Termination of Supervised Release (##244, 245) are DENIED.

SIGNED at Beaumont, Texas, this 22nd day of April, 2024.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE